1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   H. DYMITRI HARASZEWSKI,                    No.  2:13-cv-2494 JAM DB P

12                   Plaintiff,

13           v.                                 AMENDED ORDER AND FINDINGS
                                                AND RECOMMENDATIONS
14   KNIPP, et al.,

15                   Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights

18   action under 42 U.S.C. § 1983.  Plaintiff alleges defendants retaliated against him, interfered with

19   his mail, placed him in segregation as a punitive measure, and deprived him of his property.  On

20   December 2017, this court issued an Order and Findings and Recommendations granting

21   plaintiff's motion to amend his third amended complaint and recommending dismissal of a

22   number of clams.  Plaintiff filed objections.  He argues that he has alleged a claim for deprivation

23   of property.  Upon review of the objections, and for the reasons set forth below, this court finds

24   plaintiff has a potentially cognizable claim on that basis.  Accordingly, to clarify the record, the

25   court will vacate both its November 7, 2017 Order and its December 28, 2017 Order and Findings

26   and Recommendations and replace them with this Amended Order and Findings and

27   Recommendations.

28   ////

The court considers here plaintiff's third amended complaint for screening and his motion to amend the third amended complaint. For the reasons set forth below, the court finds plaintiff has stated potentially cognizable claims against some defendants, recommends dismissal of other claims and defendants, and orders service of the third amended complaint.

## I. Allegations of the Third Amended Complaint[1]

Plaintiff is incarcerated at Mule Creek State Prison ("MCSP") and his allegations involve conduct occurring there. Plaintiff identifies the following defendants: Ray Garcia, Mailroom Supervisor; D. Casagrande, Mailroom Supervisor; J. Dowdy, Mailroom Supervisor; T. Reece, mailroom employee; K. Sherlock, mailroom employee; B. Alkire, "CSR;" J. Lizarraga, "CDW (A) Chairperson;" P. Vanni, "AW;" Lieutenant Austin; Sergeant Sepulveda; and five unnamed defendants identified by plaintiff as "Yard Officer A;" "Yard Officer B;" "ISU Officer 1;" "ISU Sergeant 2;" and "ISU Lieutenant 3." (ECF No. 42 at 1.)

Plaintiff states that he is alleging four claims: (1) punitive segregation; (2) taking property as punishment; (3) threats of violence in retaliation for the exercise of First Amendment rights; and (4) mail tampering. First, plaintiff contends that on November 26, 2011 he was removed from his cell by "Officers A & B," whose names he does not recall. (ECF No. 42 at 3.) Those officers also removed a large bag of papers, books, and photos. The officers then processed plaintiff for placement in segregated housing. (Id. at 4.) Plaintiff was told to sign a 114D "placement notice." He refused to sign it because it stated only that he was being investigated as a "threat to the safety and security" of the prison due to his possession of "harassing materials." (Id.) He had three formal hearings, one interrogation, and two informal discussions with Captain Harrington, but no one has provided an explanation for his placement in segregation. Plaintiff contends Captain Harrington admitted to him that the 114D form did not provide sufficient reasons for his placement in segregated housing. Plaintiff quotes a document dated December 14, 2011 and signed by "B. Alkire." The document states that the 114D "does not provide sufficient

---

[1] Because the court has previously screened plaintiff's first and second amended complaints, the standards for screening are not restated here. (See Dec. 16, 2015 Order (ECF No. 16); Nov. 15, 2016 Order (ECF No. 29); Mar. 8, 2017 Order (ECF No. 33).)

information to the inmate to afford him the opportunity to present a defense . . . . the action of 12-1-11 indicates the inmates is being retained in ASU pending an investigation, however does not clearly document or identify the reason for the investigation and fails to provide justification for continued ASU placement. A new CDC 114D should be issued to document the current and correct reasons for retention in ASU." (Id.) Plaintiff states that he never received a new 114D. He was released from segregation on December 31, 2011.

Plaintiff states that he believes defendant Sergeant Sepulveda ordered the confiscation of his property. He believes defendant Lieutenant Austin, who signed the "lock-up order," is responsible for his segregation but he does not know where Austin may have gotten information that provided a basis for the segregation. (Id. at 5-6.)

Plaintiff further states that defendants Alkire, Vanni, and Lizarraga "would seem to know a lot as well" because their names "appear on classification documents that confirm a lack of evidence for keeping me segregated." (Id. at 5.)

He contends three ISU officers threatened him during the November 29, 2011 interrogation while he was in segregation. They told plaintiff that if he did not stop complaining about the seizure of his property and his segregation, he would experience "police harassment" and would be transferred to a "real prison, where people like you get their teeth knocked out every day." (Id. at 7.)

Thereafter, plaintiff spent several months attempting to have his seized property returned. (Id. at 6.) In April 2012, one of the three ISU officers who had interrogated him in November and defendant Sepulveda confronted him about his requests. The ISU officer told plaintiff to "stop sending fucking paperwork," that plaintiff had already received his property, and "snarl[ed] 'I already gave you your shit back and now I told you to get the fuck out, and I won't tell you again.'" (Id.) Plaintiff states that he had only received three pages of the hundreds of pages of documents seized. However, because he feared retaliation from the ISU officer, he stopped trying to get his other property returned. (Id. at 6-7.)

Plaintiff finally contends he has been subjected to tampering and withholding of his mail over the last several years. First, he contends the habeas corpus petition he mailed when he was

3

in segregated housing on December 11, 2011, was not mailed to the court until August 2012. (ECF No. 42 at 8.) He also contends that he put nine other letters out for mailing on December 11, 2011 and none of them were placed in the mail until August 2012. Plaintiff states that defendant Ray Garcia, the mailroom supervisor at the time, was responsible. He also states that it is "likely that other staff" were involved. (Id.)

Plaintiff claims that 40% of his mail has been affected in various ways over "half a decade." (ECF No. 42 at 9.) He specifically identifies a batch of seven letters he received on July 12, 2017, some of which had been sent up to sixteen days prior. He also identifies two books he was sent as Christmas gifts in 2013 that he never received. (Id.) Plaintiff specifically identifies: (1) defendant Garcia as responsible for failing to mail the ten letters when plaintiff was in segregation in December 2011; (2) defendants Garcia and Reese for failing to deliver numerous magazines and letters, improperly opening his mail outside his presence, and delaying both incoming and outgoing mail during the time period December 2011 through December 2013; (3) defendants Casagrande and Sherlock for delaying his mail, rejecting magazines and letters without notification to plaintiff, removing pages from letters without notification to plaintiff, and rejecting a book during the time period January 2014 to January 2015; and (4) defendant Dowdy for delay in incoming and outgoing mail, non-delivery of numerous letters and magazines, and refusal to deliver a book since January 2015. (Id. at 10.)

Plaintiff seeks the following relief: (1) an injunction preventing future mail tampering; (2) an injunction preventing future retaliatory action; (3) punitive damages; and (4) compensatory damages. (ECF No. 42 at 3.)

## II.    Does Plaintiff State Claims Cognizable under 42 U.S.C. § 1983?

### A.  Placement in Segregation

Assignment to segregation is an administrative measure rather than a disciplinary measure and is "essentially a matter of administrative discretion." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)). To satisfy due process, the administrative segregation process must include an informal non-adversary hearing within a reasonable time after being segregated, notice of the charges or the reasons segregation is

4

being considered, and an opportunity for the inmate to present his views. <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1100 (9th Cir. 1986), <u>abrogated in part on other grounds by</u> <u>Sandin v. Connor</u>, 515 U.S. 472, 481 (1995). "We specifically find that the due process clause does not require detailed written notice of charges." <u>Toussaint</u>, 801 F.2d at 1100–01. However, due process does require notice that is sufficient to allow the inmate to have a "meaningful" opportunity to be heard. <u>See</u> <u>Reyes v. Horel</u>, No. C 08-4561 RMW, 2012 WL 762043, at *7-8 (N.D. Cal. Mar. 7, 2012).

The gist of plaintiff's claim appears to be that the notice he was given was insufficient to permit him to defend himself at the hearing. Plaintiff states that the notice provided stated only that he was being investigated as a "threat to the safety and security" of the prison due to his possession of "harassing materials." Plaintiff further states that defendant Austin signed this notice. The court finds that, liberally construing the complaint, plaintiff has stated a potentially cognizable due process claim against defendant Austin for lack of adequate notice of the basis for his placement in segregation.

Plaintiff has not stated claims against defendants Alkire, Vanni, and Lizarraga. He states only that because those defendants signed some of the classification documents, they "would seem to know a lot as well." Plaintiff only speculates about the roles of these defendants in his segregation and alleges no action, only knowledge, on their part. Plaintiff has not sufficiently connected these three defendants to any deprivation of his constitutional rights. Accordingly, they will be dismissed from this case.

Further, plaintiff has not stated claims against the unnamed "yard officers" who removed him from his cell. With respect to this challenge to the notice of his segregation, plaintiff does not explain how those officers had any responsibility for that notice.

**B. Deprivation of Property**

Plaintiff alleges that his property was taken during an investigation as punishment by defendant Sepulveda, and, it appears, by Yard Officers A and B. He contends that because the initial seizure of his property was accomplished for purposes of an investigation, it must have been done pursuant to a prison policy or established procedure. Plaintiff states a potentially

5

cognizable due process claim for deprivation of his property. <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984). Plaintiff will be permitted to proceed on this claim against defendant Sepulveda. If plaintiff learns the identities of the Doe defendants involved, he may seek to add them to this action at that time.

### C. Retaliation

Plaintiff alleges that he was subjected to threats of violence in retaliation for filing claims for the return of his property. Allegations of retaliation against a prisoner's First Amendment rights may support a § 1983 claim. <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985); <u>see also</u> <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995). A retaliation claim requires "five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); <u>accord</u> <u>Watson v. Carter</u>, 668 F.3d 1108, 1114-15 (9th Cir. 2012); <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

In his third amended complaint, plaintiff alleges he was threatened at the November 29, 2011 interrogation by three unidentified ISU officers to stop complaining about the return of his property or he would be subjected to police harassment. However, plaintiff does not allege that those threats caused him to stop trying to get his property back. Rather, it was after the April 2012 interrogation when one of these ISU officers told plaintiff to "stop sending fucking paperwork," and "snarl[ed] 'I already gave you your shit back and now I told you to get the fuck out, and I won't tell you again.'" Plaintiff appears to be alleging that the combination of these threats caused him to stop attempting to have his property returned. A threat of harm is sufficient to support a retaliation claim. <u>See</u> <u>Watison v. Carter</u>, 668 F.3d 1108, 1115-16 (9th Cir. 2012) (allegation that officer "threatened to hit [the plaintiff] in the mouth for a complaint [he] was in the process of filing against [the officer]" is sufficient to allege retaliation claim); <u>Gleason v. Franklin</u>, No. CV 15-8380-CBM (DFM), 2017 WL 3203404, at *5 (C.D. Cal. May 16, 2017), <u>rep. and reco. adopted</u>, 2017 WL 3197226 (C.D. Cal. July 26, 2017).

Plaintiff has sufficiently alleged a claim of retaliation against the one ISU officer who was involved in both the November 2011 interrogation and the April 2012 interrogation. Plaintiff shows that threats at the two interrogations were made by that officer as a result of plaintiff's exercise of his First Amendment rights to have his property returned. He further shows that the officer's threats caused plaintiff to stop seeking the return of his property. Plaintiff does not, however, allege any action taken by defendant Sepulveda in retaliation for his attempts to have his property returned. Further, he has not alleged a cognizable retaliation claim against the two other ISU officers involved in only the November 2011 interrogation because he has not shown that their threats resulted in a chilling of his First Amendment rights.

The court originally made this finding that plaintiff stated a cognizable retaliation claim against one unnamed ISU officer in its November 7, 2017 order. (ECF No. 43 at 6-7 .) On December 20, 2017, plaintiff filed a motion to amend the third amended complaint to identify that officer as Officer Lucca. (ECF No. 46.) Plaintiff's motion to amend will be granted.

### D. Interference with Mail

#### 1. Legal Standards

With respect to incoming prisoner mail, prison officials have a responsibility to forward mail to inmates promptly. See Bryan v. Werner, 516 F.2d 233, 238 (3d Cir. 1975). Allegations that mail delivery was delayed for an inordinate amount of time and allegations of a pattern of interference with mail are sufficient to state a claim for violation of the First Amendment. See Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996); Calihan v. Adams, No. 1:09-CV-1373 MJS (PC), 2011 WL 284467, at *3 (E.D. Cal. Jan. 26, 2011) (ongoing delays of between 21 and 35 days in receiving incoming mail sufficiently long to substantially burden plaintiff's First Amendment rights and chill his exercise of free speech). Any practice or regulation that unduly delays an inmate's incoming mail must be reasonably related to legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89 (1987). But a temporary delay or isolated incident of delay does not violate a prisoner's First Amendment rights. See Crofton v. Roe, 170 F.3d 957, 961 (9th Cir. 1999) (policy of diverting publications through property room reasonably related to prison's interest in inspecting mail for contraband).

1   Prisoners also have a procedural due process right to be notified that incoming mail is

2   being withheld. "[W]ithhold[ing] delivery of [inmate mail] must be accompanied by minimum

3   procedural safeguards." Procunier v. Martinez, 416 U.S. 396, 417 (1974), overruled on other

4   grounds by Thornburgh v. Abbott, 490 U.S. 401, 413–14 (1989); Krug v. Lutz, 329 F.3d 692, 698

5   (9th Cir. 2003). However, to state a due process claim, a prisoner must also allege that the failure

6   to provide notice was "caused by conduct pursuant to established state procedure, rather than

7   random and unauthorized action." Sorrels v. McKee, 290 F.3d 965, 972 (9th Cir. 2002).

8       Prisoners also have a right to send mail. A practice of censoring outgoing mail is only

9   justified if the following criteria are met: (1) the practice or regulation furthers "an important or

10  substantial government interest unrelated to the suppression of expression" and (2) "the limitation

11  on First Amendment freedoms must be no greater than is necessary or essential to the protection

12  of the particular governmental interest involved." Procunier, 416 U.S. at 413.

13      Finally, to the extent that plaintiff claims that the interference with his mail also violated

14  applicable regulations or policies, there is no implied private right to sue civilly for violation of

15  Title 15 of the California Code of Regulations or prison regulations. See e.g., Vasquez v. Tate,

16  No. 1:10-cv-1876-JLT (PC), 2012 WL 6738167, at *9 (E.D. Cal. Dec. 28, 2012); Davis v.

17  Powell, 901 F. Supp. 2d 1196, 1211 (S.D. Cal. 2012).

18      **2.    Does Plaintiff State a Cognizable Claim for Interference with his Mail?**

19      Plaintiff contends defendants Garcia, Reese, Casagrande, Sherlock, and Dowdy were

20  responsible for the various instances of interference with his mail described above. Plaintiff

21  alleges these defendants delayed both incoming and outgoing mail, withheld incoming mail from

22  plaintiff without notice, and tampered with some incoming mail. Liberally construing the

23  complaint, the court finds plaintiff has minimally alleged potentially cognizable First Amendment

24  claims of interference with his mail. The court further finds that plaintiff's allegations of an

25  ongoing practice of failing to provide plaintiff notice that his mail was being withheld is sufficient

26  to create an inference that the prison has had a policy or practice of failing to notify plaintiff of

27  his withheld mail in violation of his due process rights.

28  ////

### III.     Leave to Amend

After more than four years, and the filing of four complaints, the court finds plaintiff has stated cognizable claims against some defendants.  The court will recommend dismissal of the claims against the remaining defendants without leave to amend.  Plaintiff has had numerous opportunities to state claims.   The court finds that further opportunities would be fruitless and further delay these proceedings.

Accordingly, IT IS HEREBY ORDERED that:

1.     The Order filed November 7, 2017 (ECF No. 43) is vacated.

2.     The Order and Findings and Recommendations filed December 28, 2017 (ECF No. 47) are vacated.

3.     Plaintiff's motion to amend (ECF No. 46) is granted.

4.     This case will proceed on the following claims:  (a) plaintiff's due process claim that defendant Austin failed to provide adequate notice for his placement in administrative segregation in December 2011; (b) plaintiff's claim for property deprivation against defendant Sepulveda; (c) plaintiff's First Amendment and due process claims for mail interference against defendants Garcia, Reese, Casagrande, Sherlock, and Dowdy; and (d) plaintiff's First Amendment claim for retaliation against defendant Lucca.  Service of the third amended complaint is thus appropriate for defendants Austin, Sepulveda, Garcia, Reese, Casagrande, Sherlock, Dowdy, and Lucca.

5.     The Clerk of the Court shall send plaintiff eight USM-285 forms, one summons, an instruction sheet, and a copy of the third amended complaint filed July 21, 2017.

6.     Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Submission of Documents and submit all of the following documents to the court at the same time:

a. The completed, signed Notice of Submission of Documents;

b. One completed summons;

c. One completed USM-285 form for each defendant listed in number 4 above; and

d. Nine copies of the endorsed third amended complaint filed July 21, 2017.

7. Plaintiff shall not attempt to effect service of the complaint on any defendant or request a waiver of service of summons from any defendant. Upon receipt of the above-described documents, the court will direct the United States Marshal to serve the above-named defendant pursuant to Federal Rule of Civil Procedure 4 without payment of cost.

Further, IT IS HEREBY RECOMMENDED that plaintiff's claims against defendants B. Alkire, J. Lizarraga, and P. Vanni be dismissed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 27, 2018

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/hara2494.tac mta.am fr

10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

H. DYMITRI HARASZEWSKI,

             Plaintiff,

   v.

KNIPP, et al.,

             Defendants.

No.  2:13-cv-2494 JAM DB P

NOTICE OF SUBMISSION

     Plaintiff submits the following documents in compliance with the court's order filed

_____:

     ____         completed summons form

     ____         completed USM-285 forms

     ____         copies of the Third Amended Complaint

DATED:

                                     _____
                                          Plaintiff