| | |
|---|---|
| H. DYMITRI HARASZEWSKI, | No. 2:13-cv-2494 JAM DB P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| GARCIA, et al., | |
| Defendants. | |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants retaliated against him, interfered with his mail, placed him in segregation as a punitive measure, and deprived him of his property. Before the court is defendant Austin's motion to dismiss. For the reasons set forth below, this court will recommend Austin's motion be granted.

**BACKGROUND**

This case is proceeding on plaintiff's third amended complaint, filed July 21, 2017. (ECF No. 42.) In that complaint, plaintiff alleges that on November 26, 2011 at Mule Creek State Prison ("MCSP"), he was removed from his cell and a large bag of his papers, books, and photos was confiscated. Plaintiff was then notified that he was being placed in administrative segregation ("ad seg") housing because he was being investigated as a "threat to the safety and security" of the prison due to his possession of "harassing materials." Plaintiff contends the

notice, signed by defendant Austin, of the basis for the ad seg placement was insufficient to permit him to argue he should not be placed there. He had three formal hearings, one interrogation, and two informal discussions with officers about the basis for the segregation. Plaintiff alleges that he never received any specific reason for his ad seg placement.

Plaintiff further alleges that his cell in ad seg lacked a "desk, seat, bed, or any other basic cell 'amenity.'" It included only a toilet; a thin, bare mattress with no sheets on the concrete floor; "very little personal property," and no electricity for his appliances. Plaintiff was in this cell for 34 days.

Plaintiff then spent several months attempting to have his property returned. During that time, he was threatened by officers with harm if he did not stop complaining about the seizure of his property. As a result of those threats, plaintiff stopped his attempts to obtain his property.

Finally, plaintiff alleges interference with his legal and other mail by several defendants.

On screening, and as relevant for purposes of the pending motion, the court found, among other things, that plaintiff stated a potentially cognizable claim against defendant Austin for lack of adequate notice of the basis for plaintiff's placement in segregation in 2011. (ECF Nos. 51.)

Defendant Austin filed a motion to dismiss on June 18, 2018. (ECF No. 58.) Plaintiff filed an opposition (ECF No. 67) and defendant filed a reply (ECF No. 68). Plaintiff then filed a request to file a sur-reply and a sur-reply. (ECF Nos. 69, 70.) Defendant opposes plaintiff's request for leave to file a sur-reply.

## MOTION TO FILE SUR-REPLY

Plaintiff requests leave to file a sur-reply to rebut defendant's "less-than-good-faith attempt to divert attention from the substance of [his] opposition." (ECF No. 69.) The Local Rules do not authorize the routine filing of a sur-reply. E.D. Cal. R. 230(l). A district court may allow a sur-reply "where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." Hill v. England, No. CVF05869RECTAG, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005); accord Norwood v. Byers, No. 2:09-cv-2929 LKK AC P, 2013 WL 3330643, at *3 (E.D. Cal. July 1, 2013) (granting the motion to strike the sur-reply because "defendants did not raise new arguments in their reply that necessitated additional

2

argument from plaintiff, plaintiff did not seek leave to file a sur-reply before actually filing it, and the arguments in the sur-reply do not alter the analysis below"), rep. and reco. adopted, 2013 WL 5156572 (E.D. Cal. Sept. 12, 2013).

In the present case, nothing about defendant's reply to the motion to dismiss provides a basis for the filing of an additional brief.[1] Thus, the undersigned will deny plaintiff's motion to file a sur-reply and the sur-reply will be stricken.

## MOTION TO DISMISS

Defendant Austin seeks to dismiss plaintiff's claim against him. Austin argues that plaintiff fails to state a due process claim for the lack of adequate notice of the reasons for his transfer to ad seg. In addition, Austin contends he is entitled to qualified immunity.

**I.    Standard of Review on Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court must accept as true the allegations of the complaint, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and construe the pleading in the light most favorable to plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may 'generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" Outdoor Media Grp., Inc. v.

---

[1] Even if the court considered plaintiff's sur-reply, the arguments raised in it do not alter the court's analysis of the issues raised in the motion to dismiss.

3

City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citing Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007)).

## II. Analysis

### A. Due Process Violation

Plaintiff's claim against defendant Austin is that Austin prepared the notice informing plaintiff of the bases for his transfer to ad seg. According to plaintiff, that notice was inadequate to allow him to defend against the transfer decision in violation of his due process rights.

#### 1. Legal Standards

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply. See id. But the Due Process Clause requires certain minimum procedural protections where serious rules violations are alleged, the power of prison officials to impose sanctions is narrowly restricted by state statute or regulations, and the sanctions are severe. See id. at 556–57, 571–72 n.19. Later, the Court limited application of the Wolff standards to prisoners who show that the deprivation of their liberty was "an atypical and significant hardship on the inmate in relation to the ordinary and normal incidents of prison life." Sandin v. O'Connor, 512 U.S. 472, 485 (1995).

Wolff established five constitutionally mandated procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566.

4

1    And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it
unlikely that the inmate will be able to collect and present the evidence necessary for an adequate
comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have
adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." Id. at
570.

Additionally, "some evidence" must support the decision of the hearing officer in a
disciplinary proceeding. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not
particularly stringent and the relevant inquiry is whether "there is any evidence in the record that
could support the conclusion reached." Id. at 455–56. However, the evidence must have some
indicia of reliability. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987).

### 2. Was Plaintiff Entitled to Due Process Protections?

Defendant Austin argues that plaintiff fails to allege that his segregation amounted to an "atypical and significant hardship" under Sandin and therefore he is not entitled to the due process protections set out in Wolff. The Ninth Circuit described three factors to consider when determining whether the deprivation imposed meets the Sandin standard:

> "1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence."

Brown v. Oregon Dept. of Corr., 751 F.3d 983, 987 (9th Cir. 2014) (quoting Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003)). The court finds plaintiff fails to allege conditions that presented the "'type of atypical and significant deprivations [that] might conceivably create a liberty interest.'" Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000) (quoting Sandin, 515 U.S. at 488.)

Plaintiff fails to allege that the conditions he was subjected to in ad seg were "materially different" from conditions in purely discretionary segregation nor does he explain how they created a "major disruption" to his environment. See Resnick, 213 F.3d at 448. In Resnick, the plaintiff alleged the following conditions of his administrative segregation: "recreational

5

opportunities and access to showers are limited; the mattress is flat and dirty; no pillow is allowed; a prisoner cannot have access to the library; and half the time the food is cold." Id. at 448 n.3. The court found these allegations insufficient under Sandin because the plaintiff "did not allege that conditions were different in administrative segregation, nor did he allege the extent to which conditions were better in the general population.[2]" Id. at 448. The Ninth Circuit in Resnick affirmed the district court's conclusion on screening that the plaintiff failed to state a due process claim.

Administrative segregation does not, in and of itself, implicate a protected liberty interest. See Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003). Courts have found the existence of atypical and significant hardships in a limited number of cases. See, e.g., Wilkinson v. Austin, 545 U.S. 209, 221–24 (2005) (inmates' liberty interests were implicated by their indefinite confinement in highly restrictive "supermax" prison, where the inmates were deprived of almost all human contact and were disqualified from parole consideration); Brown v. Oregon Dept. of Corrs., 751 F.3d 983, 988 (9th Cir. 2014) (27 months in solitary confinement without most privileges afforded inmates in the general population was atypical and significant); Vitek v. Jones, 445 U.S. 480 (1980) (liberty interest created by involuntary transfer of inmate to mental hospital); Serrano, 345 F.3d at 1078-79 (placing disabled inmate, without his wheelchair, in segregation unit not equipped for disabled persons for two months gave rise to a liberty interest). While unusually long periods of segregation in violent, overcrowded or dangerous conditions may be sufficient to constitute a cognizable due process claim, plaintiff makes no such specific allegations here regarding his confinement in ad seg. See Ramirez, 334 F.3d at 861 (noting without deciding that a two-year period of segregation in violent and overcrowded conditions while undergoing forced psychiatric evaluation may constitute "atypical and significant hardship"). "A liberty interest does not arise even when administrative segregation imposes

---

[2] Defendant attempts to characterize the court's holding in Resnick as a determination that the conditions complained of did not amount to an atypical and significant hardship. That is not the court's holding. Rather, the court held that the plaintiff failed to show the conditions in ad seg were so different from those in discretionary segregation or the general population that they amounted to an atypical and significant hardship.

6

severe hardships, such as denial of access to vocational, educational, recreational, and rehabilitative programs, restrictions on exercise, and confinement to a cell for lengthy periods of time." Toussaint v. McCarthy, 801 F.2d 1080, 1092 (9th Cir. 1986) (internal quotations omitted); see also see also Borcsok v. Early, 299 F. App'x 76, 78 (2nd Cir. 2008) (ninety-day "confinement and loss of privileges did not rise to a liberty interest, warranting procedural due process protection").

Even assuming the conditions plaintiff alleges he suffered during his 34-day segregation – no bed, no chair or desk, no sheets on the thin mattress, few items of personal property, and no electrical outlet – differ substantially from the conditions in the general population or in discretionary segregation, those conditions, while significant and uncomfortable, were not such a "dramatic departure from the basic conditions of prison life" that they created a liberty interest under the Due Process Clause. Plaintiff was in ad seg for a relatively brief period of time and suffered no apparent ill effects from his incarceration there. See Sandin, 515 U.S. at 486-87 (duration of the condition is a factor to be considered); Holland v. Schuyler, No. 1:16-cv-1271-DAD-GSA-PC, 2017 WL 3601493, at *5 (E.D. Cal. Aug. 22, 2017) (plaintiff with spinal degeneration who was forced to sleep on a bad mattress did not establish a liberty interest); Baker v. Walker, No. CIV S-08-1370 DAD P, 2008 WL 2705025, at *3 (E.D. Cal. July 9, 2008) (temporary loss of privileges not "a dramatic departure from the basic conditions" of prison life); Manzanillo v. Moulton, No. 13-cv-2174-JST (PR), 2014 WL 4793780, at *12-13 (N.D. Cal. Sept. 25, 2014) (35-day stay in noisy psychiatric unit in which other inmates threw feces and urine not an atypical and significant hardship); Skinner v. Schriro, No. CV 06-1879-PHX-SMM, 2009 WL 10695438, at *1, (D. Ariz. July 10, 2009) (segregated housing that included loss of privileges, loss of electrical appliances, and stifling temperatures for 90 days not atypical and significant).

In his opposition, plaintiff argues that his claim against defendant Austin does not fall under Sandin because he is not challenging an "atypical hardship" in segregation. (ECF No. 67 at 1.) Rather, plaintiff contends his claim is that no evidence supported his placement in segregated housing. Plaintiff appears to be attempting to change his claim. The court's screening order described plaintiff's claim against Austin as alleging that Austin "failed to provide adequate

notice for [plaintiff's] placement in administrative segregation." (ECF Nos. 51 at 9.) Plaintiff never challenged that description of his claim against Austin. In considering plaintiff's claim of lack of adequate notice, plaintiff was only entitled to that adequate notice under the Due Process Clause if his confinement in ad seg amounted to an atypical and significant hardship. As discussed above, it did not. Therefore, plaintiff fails to allege a cognizable due process claim against defendant Austin regarding the lack of adequate notice.

To the extent plaintiff seeks to amend his complaint to include a claim that there was inadequate evidence to place him in ad seg, plaintiff cannot state a due process claim because the "some evidence" standard of Hill applies only to findings made in disciplinary proceedings.

Plaintiff cites a number of cases in support of his argument that he could not be placed in ad seg without some evidence to support a charge of wrongdoing. Only one supports his position, and the court finds that case is not controlling authority. In the first case cited by plaintiff, Burnsworth v. Gunderson, 179 F.3d 771, 775 (9th Cir. 1999), the court did decline to find an "atypical hardship" in holding that a prisoner may not be convicted of a disciplinary violation without a "shred of evidence." The court was very clear to limit its holding to that situation. Burnsworth thus applies only to a prison's procedures for convicting a prisoner of a disciplinary violation. As defendant points out, plaintiff does not allege he was convicted of a disciplinary violation. Plaintiff's citation to Nonnette v. Small, 316 F.3d 872 (9th Cir. 2002) is inapplicable for the same reason. It involved an ad seg placement resulting from a disciplinary conviction for stabbing another inmate.

The one contrary case plaintiff cites is Meadows v. Porter, No. 2:07-cv-0475-HDM-RAM, 2009 WL 2050493, at *10 (E.D. Cal. July 10, 2009). In Meadows, the court considered whether plaintiff's initial placement in ad seg violated due process. The court concluded that the placement was not "arbitrary." This case appears to be an outlier. In another case cited by plaintiff, the Ninth Circuit made clear that the "some evidence" standard of Hill does not apply "to a prison guard's initial accusation of a rule violation." Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997). In fact, even if the charges against plaintiff were false, due process is not implicated unless he meets the Sandin standard. "Specifically, the fact that a prisoner may have

8

been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, No. 1:14-cv-2084-SAB (PC), 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994) and McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)); see also Deadmon v. Grannis, No. 06cv1382-LAB (WMC), 2008 WL 595883, at *7-8 (S.D. Cal. Feb. 29, 2008) ("A prisoner has no constitutionally guaranteed immunity from being wrongly or falsely accused of conduct which may result in the deprivation of a protected liberty interest." (Quoting Lopez v. Celaya, 2008 WL 205256, at *5 (N.D. Cal. Jan. 23, 2008).))

In conclusion, the court finds plaintiff has failed to allege an "atypical and significant" hardship for the 34 days he spent in ad seg in November and December 2011. Accordingly, he was not entitled to the due process protections set out in Wolff during that time and he fails to state a due process claim against defendant Austin for lack of notice. Further, to the extent plaintiff contends his placement in ad seg was baseless, he fails to show that due process required "some evidence" of wrongdoing to justify that move. Based on these conclusions, the court finds it unnecessary to reach defendant's second argument - that he is entitled to qualified immunity.

**B. Leave to Amend**

If the court finds that a claim should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the claim could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." (Citing Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987))). However, if, after careful consideration, it is clear that a claim cannot be cured by amendment, the court may dismiss it without leave to amend. Cato, 70 F.3d at 1005-06.

////

Plaintiff has had multiple opportunities to state his due process claim against defendant Austin. However, the conditions he describes in ad seg do not amount to a liberty interest. The court finds no reason to allow plaintiff to amend his complaint to attempt to describe them in any more detail. Plaintiff was not subjected to the sort of atypical hardship that would require the application of due process principles. Further, allowing amendment would be futile because plaintiff has now recast his claim – he now contends that his claim against Austin is that no evidence supported his placement in ad seg. However, the "some evidence" standard is inapplicable to plaintiff's placement in ad seg pending an investigation. Therefore, any amendment to state this claim would be futile.

The operative complaint is plaintiff's fourth. Many claims remain in this action – the court found on screening that plaintiff stated cognizable claims against defendants Garcia, Reese, Casagrande, Sherlock, and Dowdy for violation of his First Amendment and due process rights in processing his mail, against defendant Lucca for retaliation, and against defendant Sepulveda for property deprivation. (See ECF No. 51 at 9.) The court will recommend the claim against defendant Austin be dismissed without leave to amend so that this action may proceed on plaintiff's remaining claims.

For the foregoing reasons, IT IS HEREBY ORDERED that plaintiff's motion to file a sur-reply (ECF No. 69) is denied and the sur-reply (ECF No. 70) is stricken; and

IT IS RECOMMENDED that:

1. Defendant Austin's motion to dismiss (ECF No. 58) be granted; and
2. Plaintiff's due process claim against Austin in the third amended complaint be dismissed without leave to amend.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

////

specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 26, 2018

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/hara2494.mtd fr