1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    H. DYMITRI HARASZEWSKI,                        No.  2:13-cv-2494 JAM DB P

12                    Plaintiff,

13          v.                                        ORDER AND FINDINGS AND
                                                      RECOMMENDATIONS
14    KNIPP, et al.,

15                    Defendants.

16

17

18          Plaintiff is a state prisoner proceeding pro se with an action under 42 U.S.C. § 1983.

19    Before the court are plaintiff's motions to compel and to amend the third amended complaint.

20    For the reasons set forth below, this court denies the motion to compel and recommends the

21    motion to amend be denied.

22                                    **MOTION TO COMPEL**

23          Plaintiff's motion to compel seeks two things.  First, plaintiff asks the court to require

24    defendants to provide him with an address for defendant Garcia.  Second, plaintiff moves to

25    compel responses to discovery.

26    **I.  Background**

27          Plaintiff initiated this action in 2013.  The case is proceeding on plaintiff's third amended

28    complaint ("TAC") filed July 21, 2017.  (ECF No. 42.)  On screening, this court found plaintiff

1    stated potentially cognizable claims against the following defendants:  Austin, Sepulveda, Garcia,

2    Reese, Casagrande, Sherlock, Dowdy, and Lucca.  (ECF No. 51.)  In June 2019, the court granted

3    defendant Austin's motion to dismiss.  (ECF No. 79.)  In July 2019, defendants Casagrande,

4    Dowdy, Lucca, Reese, Sepulveda, and Bolton (formerly Sherlock) filed an answer to the TAC.

5    (ECF No. 80.)

6         On December 2, 2019, plaintiff filed a motion for service of the TAC on defendant

7    Garcia.  This court then ordered counsel for defendants to contact the California Department of

8    Corrections and Rehabilitation ("CDCR") to attempt to obtain an address for Garcia.  This court

9    warned plaintiff at that time that if Garcia's contact information was not available from CDCR,

10   then this court could not order service on Garcia.  Plaintiff was told it was his responsibility to

11   provide an address for Garcia.  (ECF No. 91.)  In his response to the court order, counsel for

12   defendants informed the court that Garcia had separated from service with CDCR several years

13   ago and CDCR no longer had a forwarding address for Garcia.  (ECF No. 92.)

14        The court's discovery and scheduling order was issued on August 20, 2019.  The order

15   provided:  "The parties may conduct discovery until December 20, 2019.  Any motions necessary

16   to compel discovery shall be filed by that date.  All requests for discovery pursuant to Fed. R.

17   Civ. P. 31, 33, 34 or 36 shall be served not later than sixty days prior to that date."  (ECF No. 84.)

18   In an order filed December 6, 2019, this court granted plaintiff's request for a 30-day extension of

19   the discovery deadline to January 20, 2020.  (ECF No. 88.)  Plaintiff filed the present motion to

20   compel on April 16, 2020.[1]  (ECF No. 113.)

21   **II.  Discussion**

22        **A.  Service on Defendant Garcia**

23        Plaintiff states that he has asked defendants' counsel to explain what defendants have

24   done to locate Garcia and whether Garcia left CDCR voluntarily.  He expresses frustration that

_____

25   [1] Under the "mailbox rule," the court considers the date a prisoner turns over his filing to prison
26   authorities for mailing as the filing date.  See Houston v. Lack, 487 U.S. 266, 270 (1988).
     Plaintiff's motion to compel was filed here on April 22, 2020.  Plaintiff did not include a proof of
27   service with the motion as required by Local Rule 135(c) so it is not clear when plaintiff placed
     the motion in the prison mail.  Plaintiff signed the motion on April 16, 2020.  For purposes of this
28   order, this court will consider April 16 as the date of filing.

1    defendants' counsel has not responded to these questions.  He asks the court to "compel the

2    defendants to find and serve Ray Garcia or to explain why they cannot (and how it could possibly

3    be more reasonable to expect a prisoner to try and do so)."  (ECF No. 113.)

4         Federal Rule of Civil Procedure 4(m) provides a time limit for service of a complaint:

5              If a defendant is not served within 90 days after the complaint is filed,
               the court--on motion or on its own after notice to the plaintiff--must
6              dismiss the action without prejudice against that defendant or order
               that service be made within a specified time. But if the plaintiff
7              shows good cause for the failure, the court must extend the time for
               service for an appropriate period.
8

9    While a plaintiff who has been granted in forma pauperis status is entitled to rely on the United

10   States Marshal to serve a defendant, it is the plaintiff's duty to provide the defendant's address.

11   Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir. 1994) ("[W]here a pro se plaintiff fails to

12   provide the Marshal with accurate and sufficient information to effect service of the summons

13   and complaint, the court's sua sponte dismissal of the unserved defendants is appropriate."),

14   overruled on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); see also Howard v.

15   Encinas, No.1:18-cv-01710 DAD EPG, 2020 WL 2489634, at *2 (E.D. Cal. May 14, 2020)

16   (same) (citing Walker, 14 F.3d at 1421-22), rep. and reco. adopted, 2020 WL 3893633 (E.D. Cal.

17   July 10, 2020).

18        This court has given plaintiff a substantial period of time to attempt to locate defendant

19   Garcia and enlisted the aid of defendants' counsel as well.  The court recognizes the difficulties

20   for plaintiff to search for an address while incarcerated.  However, plaintiff has known for well

21   over six months that defendants were unable to obtain an address for Garcia from CDCR.

22   Plaintiff should also have known that it is his responsibility to obtain an address.[2]  Plaintiff will

23   be given one final opportunity to either provide Garcia's address or show cause why Garcia

24   should not be dismissed from this action.  Plaintiff is advised that any dismissal of Garcia will be

25   without prejudice.

26   _____

27   [2] To the extent plaintiff may complain that he did not understand this responsibility, he is
     reminded that it is not the opposing party's duty to assist plaintiff in pursuing this action; nor is it
28   the court's "obligation to act as counsel or paralegal to pro se litigants."  Pliler v. Ford, 542 U.S.
     225, 231 (2004).

### B.  Compelling Discovery Responses

Plaintiff's motion to compel discovery responses is one-sentence long.  He simply asks the court to order defendants to "provide the answers to my interrogatories and requests for documents, all of which were conservative and reasonable in scope, as well as indispensable for prosecuting my claims."  (ECF No. 113.)

In their opposition, defendants explain that plaintiff served interrogatories and requests for production of documents on December 31, 2019 and January 12, 2020.  (Perkins Decl. (ECF No. 117-1) ¶¶ 4-5.)  On February 14, 2020, defendants sent plaintiff objections to these requests, arguing that they were untimely.  (Id. ¶ 7.)  On April 16, 2020, plaintiff filed his motion to compel.  (ECF No. 113.)

As described above, the discovery deadline was continued, at plaintiff's request, to January 20, 2020.  The court's order extending the discovery deadline did not change any other aspects of the August 20, 2019 Discovery and Scheduling Order.  (See ECF No. 88.)  The Discovery and Scheduling Order required requests for discovery to be served 60 days before the discovery deadline and motions to compel discovery to be filed by the deadline.

Plaintiff's requests were served far too late and plaintiff waited almost two months from the date of service of defendants' objections, and three months from the discovery deadline, to file his motion to compel.  Moreover, plaintiff's motion is substantively deficient.  A party moving to compel bears the burden of informing the court (1) which discovery requests are the subject of the motion to compel, (2) which of the responses are disputed, (3) why the party believes the response is deficient, (4) why any objections are not justified, and (5) why the information sought through discovery is relevant to the prosecution of this action.  McCoy v. Ramirez, No. 1:13-cv-1808-MJS (PC), 2016 WL 3196738, at *1 (E.D. Cal. June 9, 2016); Ellis v. Cambra, No. 1:02-cv-5646-AWI-SMS PC, 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008).

Plaintiff's motion met none of these burdens.  In his reply brief, plaintiff discusses defendants' objection based on timeliness, but still fails to make any showing regarding the necessity for this discovery.  For all of these reasons, plaintiff's motion to compel will be denied.

////

4

**MOTION TO AMEND**

**I. Background**

    **A. Allegations of the Third Amended Complaint**

        Plaintiff alleged that on November 26, 2011 at Mule Creek State Prison ("MCSP"), he was removed from his cell and a large bag of his papers, books, and photos was confiscated. Plaintiff was then notified that he was being placed in administrative segregation ("ad seg") because he was being investigated as a "threat to the safety and security" of the prison due to his possession of "harassing materials."  Plaintiff contends the notice of the basis for the ad seg placement was insufficient to permit him to argue he should not be placed there.  He had three formal hearings, one interrogation, and two informal discussions with officers about the basis for the segregation.  Plaintiff alleges that he never received any specific reason for his ad seg placement.

        Plaintiff then spent several months attempting to have his property returned.  During that time, he was threatened by officers with harm if he did not stop complaining about the seizure of his property.  As a result of those threats, plaintiff stopped his attempts to obtain his property. Finally, plaintiff alleged interference with his legal and other mail by several defendants.

        The following claims survived screening and the motion to dismiss:  (1) property deprivation in violation of due process against defendant Sepulveda; (2) First Amendment and due process claims for mail interference against defendants Garcia, Reese, Casagrande, Sherlock (now Bolton), and Dowdy; and (3) a First Amendment claim for retaliation against defendant Lucca.  (Feb. 27, 2018 Screening Order (ECF No. 51) and June 11, 2019 Order Granting Motion to Dismiss (ECF No. 79).)

    **B. Prior Motion to Amend TAC**

        On December 12, 2019, plaintiff moved to amend the TAC.  He sought to identify Lieutenant Knerl as one of the Doe defendants involved in alleged threats and retaliation against him.  However, in the February 2018 screening order, this court found plaintiff failed to state a cognizable claim against the Doe defendant now identified as Knerl.  (ECF No. 51 at 7.)  Because plaintiff added no new allegations against Knerl that might have changed this court's prior

5

1   conclusion, this court recommended plaintiff's motion to amend be denied because any

2   amendment would be futile.  (ECF No. 99.)  District Judge Mendez adopted that recommendation

3   in full on May 6, 2020.  (ECF No. 115.)

4   **II.  Legal Standards for Motion to Amend**

5          The Federal Rules provide that leave to amend pleadings "shall be freely given when

6   justice so requires."  Fed. R. Civ. P. 15(a).  "[T]his policy is to be applied with extreme

7   liberality."  Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.1990)

8   (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir.1987)).  However, the

9   Supreme Court has stated that a court may decline to grant leave for reasons that are apparent and

10  stated on the record.  Foman v. Davis, 371 U.S. 178, 182 (1962).  Further, the court has

11  "particularly broad" discretion where plaintiff has been granted leave to amend in the past.

12  Chodos v. West Publ'g Co., Inc., 292 F.3d 992, 1003 (9th Cir. 2002) (citing Griggs v. Pace Am.

13  Group, Inc., 170 F.3d 877, 879 (9th Cir. 1999)).

14         The Ninth Circuit has interpreted the decision in Foman as identifying "four factors

15  relevant to whether a motion for leave to amend the pleadings should be denied:  undue delay,

16  bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party."  United

17  States v. Webb, 655 F.2d 977, 980 (9th Cir. 1981).  The factors do not carry equal weight.

18  "[D]elay alone no matter how lengthy is an insufficient ground for denial of leave to amend."  Id.

19  "Prejudice to the opposing party is the most important factor."  Jackson v. Bank of Hawai'i, 902

20  F.2d 1385, 1387 (9th Cir. 1990).  "Absent prejudice, or a strong showing of any of the remaining

21  Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend."

22  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

23         Futility of an amendment can, standing alone, justify denial of a request to file an

24  amended pleading.  See Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).  A proposed

25  amendment is futile if it presents no set of facts that would, even if proven, constitute a valid

26  claim.  See Miller v. Rykoff–Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).  The standard for

27  assessing whether a proposed amendment is futile is therefore the same as the standard imposed

28  under Federal Rule of Civil Procedure 12(b)(6).  Id.  In that analysis, the court reviews the

1    complaint for "facial plausibility."  "A claim has facial plausibility when the plaintiff pleads
2    factual content that allows the court to draw the reasonable inference that the defendant is liable
3    for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of
4    the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.
5         Finally, any motion to amend the complaint must attach a copy of the amended complaint.
6    E.D. Cal. R. 137(c).  That amended complaint must explain the new claims against the new
7    defendants by (a) identifying a person, (b) briefly describing what that person did or did not do,
8    and (c) explaining why that person's conduct violated plaintiff's constitutional rights.
9    **III.  Proposed Fourth Amended Complaint**
10        In his proposed fourth amended complaint ("4AC"), plaintiff has re-focused his
11   allegations to argue that they demonstrate defendants acted in retaliation for his exercise of the
12   First Amendment rights to free expression and free association.  He identifies the following
13   defendants:  Garcia, Austin, Dowdy, Casagrande, Lucca, Knerl, Sepulveda, and Reece; and
14   asserts claims against the following unnamed defendants:  ISU Sergeant Doe, Yard Officer A
15   Doe, and Yard Officer B Doe.
16        Plaintiff contends that in November 2011, his cellmate told officers that plaintiff
17   possessed materials "related to the conviction I suffered in 2009."  Plaintiff does not explain that
18   conviction in his 4AC.  It is a matter of public record that plaintiff was convicted in 2009 of 23
19   counts, with related enhancements, of sex crimes involving minors.  Plaintiff was sentenced to a
20   determinate prison term of 36 years and an indeterminate term of 600 years to life.  See People v.
21   Haraszewski, 203 Cal. App. 4th 924 (2012).
22        Based on the information from plaintiff's cellmate, defendant Sepulveda ordered two
23   officers, who plaintiff identifies as Doe defendants, to confiscate hundreds of pages of written
24   material, including writings authored by plaintiff, and photographs from plaintiff's cell.  Plaintiff
25   contends Sepulveda ordered the confiscation because he personally felt the materials plaintiff
26   possessed were "objectionable" or "offensive."  As a result of the confiscation of materials,
27   plaintiff was placed in ad seg.  The notice of that placement was authored by defendant Austin.
28   When asked why he was being placed there, plaintiff alleges Sepulveda stated: "You know why;

1    don't play stupid."  He was later told he was being investigated for possession of "harassing

2    materials."

3         In his first segregation hearing, it was determined that plaintiff had not been provided

4    proper notice of the basis for the ad seg placement.  Plaintiff alleges he was released from ad seg

5    suddenly and without ever receiving a notice informing him of the reason for the segregation.

6         While in ad seg, plaintiff alleges he was interrogated by Investigation Services Unit

7    ("ISU") officers Knerl, Lucca, and Doe.  Plaintiff states that these officers questioned him about

8    the materials in his cell and about his commitment offenses.  They told him his possession of the

9    materials did not violate any rules but were "not good to have."  Knerl then told him that a "guy

10   like" him could not have those materials, which plaintiff identifies as related to "human

11   sexuality" and "social justice."  Plaintiff alleges either defendant Lucca or the unidentified officer

12   told him that if these issues came up again, he would make sure plaintiff was transferred to a "real

13   prison" where "people get their fuckin' teeth knocked out."

14        Plaintiff further alleges that while in segregated housing in November and December

15   2011, ten documents he placed in the prison mail, including a request for injunctive relief to a

16   court, "surfaced" much later with postmarks indicating they had not been mailed until August

17   2012.

18        Plaintiff alleges that in January 2012, defendant Garcia wrote him up for improper use of

19   indigent mail, which plaintiff contends was false.

20        After he was released from segregation, plaintiff made a number of attempts to have his

21   property returned.  Defendant Lucca told him that only three sheets of paper had been confiscated

22   and three sheets of paper were returned to plaintiff.  At one point, during a meeting with Lucca

23   and Sepulveda regarding his attempts, Lucca told him to "stop sending fucking paperwork" and

24   told plaintiff he had "already given you your shit back and now I told you to get the fuck out and I

25   won't tell you again."  Plaintiff states that these "escalating threats" caused him to stop requesting

26   the return of his confiscated property.

27        Plaintiff states that over the next 16 months, much of his incoming and outgoing mail was

28   significantly delayed or confiscated.  In particular, plaintiff references a book authored by one of

8

1    Jerry Sandusky's victims[3] that he was not permitted to have because it was labelled by mailroom

2    staff as "obscene."

3         Plaintiff contends he was subjected to further harassment in 2013 when a "random" drug

4    test was falsely reported as positive for cocaine.  Plaintiff does not appear to be attempting to

5    include this event as the basis for any claims in his 4AC.

6         Plaintiff states that he is alleging claims for retaliation for exercising his First Amendment

7    rights.

8    **IV.  Discussion**

9         Plaintiff argues that he should be permitted to amend his complaint because he only

10   recently became aware that defendants' actions were motivated by their disapproval for plaintiff's

11   conduct protected by the First Amendment.  Plaintiff states that during his deposition, defendants'

12   counsel revealed a memorandum authored by defendant Knerl that, plaintiff argues, demonstrates

13   defendants' actions were retaliatory.  Plaintiff further argues that he did not understand until

14   recently that retaliation could be a constitutional claim on its own.  He states that the court never

15   construed his claims as alleging retaliation even though language he used to state those claims

16   previously indicated a retaliatory motive on the part of defendants.  (See ECF No. 109.)

17        In their opposition, defendants argue:  (1) the delay in making the allegations of retaliation

18   and in adding new defendants is presumptively prejudicial; (2) plaintiff could have obtained this

19   information earlier if he had sought the memorandum authored by Knerl through discovery; and

20   (3) plaintiff's amendment to add retaliation claims against the mailroom defendants is futile

21   because plaintiff does not allege cognizable claims for retaliation against those defendants.

22        This court finds that prejudice to the opposing party and undue delay warrant denial of

23   plaintiff's request to amend.  The 4AC raises a different legal theory (i.e., retaliation), which will

24   require proof of different facts regarding issues such as retaliatory intent and the bases for

25   plaintiff's claim of First Amendment protections for the materials in his cell.  In addition, the

26

27   ───────────────
     [3] Jerry Sandusky was a college football coach who was convicted in 2012 of sexually abusing 10
     boys over a 15-year period.  See https://www.npr.org/2011/11/08/142111804/penn-state-abuse-

28   scandal-a-guide-and-timeline.

4AC brings in two new defendants.  See Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir.1990) (denying leave to amend where additional claims "advance different legal theories and require proof of different facts").  Moreover, plaintiff filed his request for leave to amend over five months after he learned about the basis for amendment and well over a month after the close of discovery.

Defendants will be prejudiced if leave to amend is granted because discovery will be reopened to focus on plaintiff's new claims that defendants' conduct was retaliatory and defendants will have to conduct another deposition of plaintiff, new defendants will be subjected to new written discovery, existing defendants would also likely be subjected to new discovery, defendants will be required to litigate both any concomitant discovery disputes that may arise and, most likely, the issue of exhaustion since plaintiff admits he did not raise these claims in his grievances.  See Solomon v. N. Am. Life & Cas. Ins. Co., 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming district court's conclusion that motion to amend filed two weeks before discovery deadline would cause undue delay and prejudice and holding the "district court did not abuse its discretion in denying the motion to amend at that late date").

"[I]n evaluating undue delay, we also inquire 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.'" AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 953 (9th Cir. 2006) (quoting Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990)).  Whether or not plaintiff should have known about Knerl's memorandum and involvement at the time he filed his TAC in 2017, plaintiff was well aware of that memorandum months before he filed the present motion to amend.

Plaintiff was deposed on October 11, 2019.  A copy of his deposition transcript was lodged with the court as an exhibit to defendants' motion for summary judgment.  (See ECF No. 121-12.)  During the deposition, plaintiff was shown and questioned about an "informational chrono" from his central file.  The chrono was dated December 27, 2011 and was authored by Lieutenant Knerl.  It involved an interview with plaintiff on November 28, 2011, shortly after he ////

1    was placed in segregated housing, and investigations that occurred thereafter.  (See Pltf.'s Depo.

2    at 59.)  Defendants' counsel explained the contents of the memorandum to plaintiff as follows:

3            The ISU sergeant summarized that there was property discovered in
             your cell which may have been used to harass the victims from your
4            commitment offense.·  Upon reviewing the contents, he discovered
             there were letters from family members identifying one of your
5            victims.·  He reviewed your central file, and the documentation listed
             the individual as a victim of your San Diego County case from 2007.·
6            Now, that's the offense for which you are committed in the custody
             of CDCR.
7

8    (Id. at 61.)  The memorandum further recounted that plaintiff was engaging in contact with one of

9    his victims; and that on December 21, 2011, officers learned that the San Diego court had not

10   ordered plaintiff to refrain from contact with the victims.  Plaintiff was then released from ad seg.

11          Plaintiff first sought to amend his complaint to add Knerl in December 2019.  (See ECF

12   No. 90.)  Plaintiff's motion made clear that he had, at that time, reviewed the transcript of the

13   October 2019 deposition.  (Id. at 1.)  On January 27, the undersigned recommended plaintiff's

14   motion be denied.  (ECF No. 99.)  Over a month later, and five months after his deposition,

15   plaintiff filed the present motion to amend in which he, again, attempts to add Knerl to this case

16   and attempts to renew his complaints about Austin by reframing them as complaints for

17   retaliation.[4]

18          Plaintiff has been aware of Knerl's identity, the fact that Knerl authored a post-interview

19   memorandum, and the contents of that memorandum since October 11, 2019.  However, he

20   waited two months to file his first motion to include Knerl and over five months to make the

21   second motion.  Moreover, plaintiff's assertion that he did not previously realize retaliation may

22   be a stand-alone claim does not ring true.  In an August 26, 2015 order, a formerly-assigned

23   magistrate judge screened plaintiff's original complaint.  (ECF No. 10.)  The order found plaintiff

24   failed to state any claims cognizable under § 1983.  The order construed plaintiff's complaint as

25   attempting to state claims for:  "interfering and tampering with plaintiff's mail, deprivation of

26   private property, placement in administrative segregation without due process, and retaliation."

27   _____

28   [4] Based on the "mailbox rule" plaintiff's motion to amend will be deemed filed, for purposes of
     this order, on March 10, 2020, the date he signed it.

(Id. at 4.)  The court then provided plaintiff with the legal standards for each of these potential claims, including for a potential claim of retaliation.  (Id. at 7.)  Upon screening plaintiff's TAC in early 2018, this court found plaintiff had stated a claim for retaliation against defendant Lucca for threatening plaintiff based on plaintiff's filing of grievances seeking the return of his property.  (See ECF No. 51 at 6.)  Again, plaintiff was provided with the legal standards for alleging a claim of retaliation.  (Id.)  Plaintiff has been, or should have been, aware for years that an act committed in retaliation for the exercise of First Amendment rights was a potential claim under § 1983.

Plaintiff's explanations for his delay in bringing the claims raised in the 4AC are insufficient.  He has been permitted to amend his complaint three times previously and should not be permitted to cause defendants prejudice by delaying these proceedings further.  Moreover, the events at issue occurred in 2011.  Defendants are entitled to be notified of claims in a timely manner so that they may prepare a defense.  This court finds plaintiff's delay in raising the claims in his 4AC to be undue and that the delay will result in prejudice to defendants.  Plaintiff's request for leave to amend should be denied.

Accordingly, IT IS HEREBY ORDERED as follows:

1.  Plaintiff's motion to compel (ECF No. 113) is denied; and

2.  Within thirty days of the filed date of this order, plaintiff shall either supply the court with defendant Garcia's address or show cause why defendant Garcia should not be dismissed from this action.  If plaintiff fails to file one of these documents in a timely fashion, this court will recommend defendant Garcia be dismissed without prejudice.

Further, IT IS RECOMMENDED that plaintiff's motion to amend the third amended complaint (ECF No. 109) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after being served with these findings and recommendations, either party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified

////

time may result in waiver of the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 11, 2020

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DB/prisoner-civil rights/hara2494.mtc mta